CASE 3—ACTION FOR EJECTION FROM TRAIN—MAY 31.

# Lexington & Eastern Railway Co. v. Lyons, Etc.

### APPEAL FROM LEE CIRCUIT COURT.

1. ACTION FOR EJECTION FROM TRAIN—EVIDENCE.—In an action for·· damages for unlawful ejection of plaintiff from the train of defendant, when there was an issue of fact as to whether a. ticket, which on its face was limited to use to two days after date of sale, had been represented by the selling agent at the· time of sale as good for a longer time, a circular issued by the defendant to its agents directing them to limit to two days tick-· ets like plaintiff's was competent.

2. SAME.—Evidence that the same agent on the same occasion sold three other tickets to another person with the representation that they were good beyond the time specified on their face was· competent.

3. SAME.—Such evidence was competent in rebuttal, the agent having denied the making of such representation.

4. TICKETS AS EVIDENCE OF THE PASSENGER'S CONTRACT.—The ticket accepted by the passenger must usually be treated as. conclusive evidence of the passenger's rights as between him and the conductor, leaving the passenger to his action against the carrier, if he has not been given such a ticket as he contracted for.

5. TICKETS—EVIDENCE.—Where the proof shows, however, that the time for the journey was represented by the agent selling the. ticket as extending beyond that stated in the ticket, and a passenger is ejected from the train while attempting to make the journey within the time so represented by the agent, he may recover compensatory damages as for breach of contract.

6. CARRIERS—LIABILITY FOR EJECTION WHERE TICKET HAD EXPIRED. —Where the contract of carriage had expired by the terms of ' the contract as evidenced by the ticket, and the passenger declined to pay his fare, the carrier was not liable for the expulsion of the passenger from the train as tortious, unless such expulsion was accompanied with unreasonable and unnecessary force or insult.

7. SAME—DAMAGES.—In such an action where there is evidence warranting the jury in believing that the agent selling the ticket has assured the passenger that the ticket would be good beyond the two days' limit, the carrier's liability is *ex contractu* and the measure of damages is compensation including that for mortification and humiliation.

8. SAME— EXCESSIVE DAMAGES.—Where the passenger was expelled from the train one mile from Lexington, and had to walk back to that city, where he remained over night, returning to his home the following day, a verdict for $260 was excessive.

MORTON & DARNELL AND ARTHUR CAREY FOR APPELLANT.
   (Brief withdrawn from the record.)

H. H. HARRIS, THEO. B. BLAKEY AND RIDDELL & RIDDELL FOR APPELLEE.

   Upon all of the issues in this case, the evidence being conflicting, the finding of the jury is conclusive.

T. B. BLAKEY AND H. H. HARRIS FOR APPELLEE IN A PETITION FOR A REHEARING.

   This court having held that damages were recoverable for the mortification and humiliation of plaintiff in being ejected from the train, the jury were the sole judges of the amount of damages plaintiff was entitled to recover, and their verdict ought not to be disturbed, unless it was the outgrowth of passion or prejudice.

J. R. MORTON FOR APPELLANT, IN RESPONSE TO A PETITION FOR A REHEARING.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellee, a boy about 14 years of age, suing by his next friend, brought this action to recover damages for being by the conductor put off a passenger train belonging to appellant, under the following alleged circumstances: On December 25, 1894, he purchased of appellant's ticket agent, at Beattyville Junction, a round-trip ticket from that station on appellant's road to Lexington and back; the return ticket being printed, and as follows: "Issued by the

Lexington & Eastern Railway. Excursion Lexington Exposition, Lexington, Ky., to Beattyville Junction. Not good after two days from sale and in no case good after January 8, 1895. [Signed] Charles Scott, General Passenger Agent." On the back of the ticket were the words, "No stopover allowed;" also stamp of the railroad and the words in writing, "Dec. 25, 1894." December 31, 1894, appellee boarded appellant's train at Lexington for the purpose of returning to Beattyville Junction, but the conducter of that train, when about a mile out from the depot, refused to accept from appellee the return ticket described in satisfaction of his fare, and appellee, failing to pay his fare in money, was ejected from the train and compelled to walk back to Lexington, where he remained until the next day, when he paid his fare, and returned home.

It is alleged in the petition, but denied in the answer, that at the time appellee purchased said round-trip ticket at Beattyville Junction the ticket agent of appellant at that station represented to him that it would be good until the 8th day of January, 1895, and upon said representation appellee paid to said agent the sum of $2.35, and received therefor said ticket. Upon the trial the court gave to the jury the following instructions: "The court instructs the jury that if they believe from the evidence that at the time plaintiff bought the ticket offered in evidence that defendant's agent at Beattyville Junction represented to plaintiff that said ticket would be good for passage upon defendant's train from Beattyville Junction to Lexington and return at any time between the 25th day of December, 1894, and January 8, 1895, and that plaintiff bought and paid for said ticket relying upon said representation, and that plaintiff offered and attempted to return upon defendant's train before January 8, 1895, and was ejected there-

from by defendant's agents or employes, they will find for plaintiff such damages, if any, as they believe from the evidence he has sustained by reason of said ejectment not exceeding $5,000, and unless they so believe they will find for defendant. The measure of damages, if any, is such as will compensate the plaintiff for any loss of time, expense of a night in Lexington, the cost of transportation from Lexington to Beattyville Junction, and for any humiliation or mortification to which he may have been subjected by reason of being removed from the train; but as to this latter item of damages the jury are instructed that they should not allow him, if they believe from the evidence that before he got upon the train at Lexington to return to Beattyville Junction the extension of his ticket had been refused by an officer of the company, and that plaintiff knew at the time he entered the train that he would not be allowed to travel upon said ticket." As there was evidence, although contradicted, tending to show that the alleged representations were made by the ticket agent at Beattyville Junction, and relied on by appellee, and also that prior to the time of his expulsion from the train he neither asked for, nor did the general manager of the road refuse, an extension of his ticket, the finding of the jury upon these two issues of facts must be accepted as true. However, it is proper in this connection to notice two rulings of the court, during the trial, upon the competency of evidence, complained of by appellant: First. Whether, on the 14th day of December, 1894, the general passenger agent, by circular letter, directed the ticket agent at Beattyville Junction to limit all excursion tickets like the one in question to two days from date of sale, which appellant avowed, if permitted by the court, it would show he did do, was not, in our opinion, an inquiry

materially affecting the legal rights of the parties. But as
that circular did have some bearing on the issue of fact
whether Jones, the ticket agent, did, as appellee testified,
or did not, as he himself testified, make the representa-
tion referred to, the court ought to have permitted it
read to the jury. Second. We think the court did not err
in permitting the witness Blakey to testify that on the
same occasion he purchased three similar excusion tickets,
and that the ticket agent at Beattyville Junction made the
same representations as to them as appellee alleged in his
petition and testified was made with reference to the
one he had purchased. Nor does it make any difference
that the testimony of Blakey was given "in rebuttal" in-
stead of "in chief," inasmuch as Jones, upon the interro-
gation of appellant, stated that he made no representa-
tion as to Blakey except that he would sell the tickets
until January 8, 1895. The generally received doctrine
upon the subject of passenger tickets is that they are for
the most part mere memoranda, importing a contract upon
the part of the carrier to carry a passenger from one point
to another in the manner in which the holders of such
tickets are usually carried; the real contract between the
carrier and the passenger being usually made before the
ticket is delivered. Accordingly, it has been held that
where the ticket does not purport to be and is not the
complete agreement between the carrier and the passen-
ger, supplementary evidence is competent to show what was
the real contract indicated by the ticket. Nevertheless,
it is generally, and, we think, properly, held that the
ticket accepted by the passenger must usually be treated
as conclusive evidence of the passenger's rights as between
him and the conductor, leaving the passenger to his ac-
tion against the carrier if he has not been given such a

ticket as the contract called for; otherwise the conductor would be compelled to accept the statements of the passenger in preference to, and contradictory of, the ticket presented to and relied on by himself. Nevertheless, in one case; Hufford v. Railroad Co., 64 Mich. 631 [31 N. W. 544],it has been held—though we think, incorrectly—to be the duty of the conductor to accept the passenger's statement until he finds out it is not true, no matter what the ticket contained in words, figures, or other marks. As between the two, the conductor may properly rely upon the ticket as it reads, and, as the passenger can not reasonably demand more, it follows that the expulsion of the latter from the train in a case like the one before us can not be regarded as tortious unless accompanied with unreasonable and unnecessary force or insult. Although it is alleged in the petition that the conductor wrongfully and maliciously, and to the humiliation of appellee, ejected him from the train, the action is essentially and in form ex contractu, and the recovery, if any, must be necessarily limited to compensatory damages. And we do not think the jury were in fact instructed, or could have fairly understood, that they were authorized to find exemplary damages; for the mortification and humiliation consequent upon the wrongful ejection of a passenger from a railroad train is a proper element of damages recoverable for a breach of contract like the present. The instructions given by the lower court accord with the principles here indicated, and, we think, were correct, but the amount of recovery assessed by the jury in this case was excessive—in fact many times greater than the amount of actual damages sustained by appellee, or that can be legally or justly sanctioned by any court. The verdict, therefore, for that reason, ought to have been set aside, and for the error of

the lower court in not doing so the judgment is reversed and the cause remanded for proceedings consistent with this opinion.