## Illinois Central Railroad Company v. Fleming.

(Decided May 17, 1912.)

### Appeal from Henderson Circuit Court.

1. Railroads—Mistake in Issue of Excursion Ticket—Threat to Eject Passenger Who was Compelled to Borrow Money from Stranger to Pay Fare—Action for Damages—Instructions—Verdict.— A Passenger bought the right of transportation from Evansville, Ind. to Chicago, Ill., and return, the contract calling for return passage not later than July 15. The selling agent made a mistake in furnishing the passenger a ticket providing July 12, as the last day. In an action against the railroad company for damages for being awakened by the conductor upon her return and compelled by him to pay her passage after being subjected to the humiliation of having to borrow the money from a stranger before whom she was forced to appear only partly clad, it cannot be said that a verdict for $750.00 compensatory damages is unreasonable, and the conduct of the conductor was such as to justify the instruction upon which the award of $250.00 punitive damages was given.

2. Railroads—Defense Interposed by.—The defense that had the company transported the passenger upon the expired ticket it would have been guilty of an infraction of the Interstate Commerce Law is not meritorious. The passenger was the beneficiary of no rebate, nor special privilege, but had bought and paid for certain transportation at a certain price, the price at which every other traveler desiring like service could have bought it, and no

offense was committed by the railroad in entering into the contract.

3.   Railroads—Instructions.—While the instruction complained of was not a correct statement of the law, it was in favor of and not against appellant.   The appellee was entitled to have the jury instructed upon her rights with relation to the railroad company, and not upon the somewhat narrower relation of the conductor's duty upon the erroneous ticket contract.

TRABUE, DOOLAN & COX, C. L. SIVLEY, JOHN L. DORSEY and JOHN C. WORSHAM for appellant.

YEAMAN & YEAMAN for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

In the summer of 1911 the appellee bought from the appellant at Evansville, Ind., the right of transportation to Chicago, Ill., and return.   Her contract was upon a reduced excursion rate, which rate had been duly scheduled and filed as demanded by the interstate commerce statute.   Her contract was for return passage not later than July 15th; but the selling agent, in supplying her with her ticket, the written memorial of her contract, by mistake furnished her with a ticket providing July 12th as the last return day.   Together with a traveling companion, who had purchased a like contract, appellee journeyed to Chicago.   Upon the night of the 14th she presented herself at the Illinois Central ticket office in Chicago, where her ticket was stamped and validated in due form without any question about its expiration.   Upon it she was admitted by the gatekeeper through the gate to the train shed.   Her train was pointed out to her and she boarded it.   She went into the Pullman sleeping car, delivered her ticket to the porter and retired.   The train left Chicago on the 15th about 2:40 a. m.   About daylight she was awakened by the conductor, who informed her that her ticket had expired, and that she would either have to pay fare or leave the train.   She had not sufficient money, but succeeded in borrowing it from a stranger on the train, paid her fare, and was transported back to Evansville.   Her companion, Miss Roberts, had a ticket with the same error in its return limit, had it validated in the same way, went upon the return train with her, delivered her ticket to the porter, and retired in the same sleeper berth.   She, too, was awakened by the conductor and the same demand made of her.   She

also came home on the money borrowed from the stranger. Mrs. Fleming brought her action against the railroad company for damages, charging that the conductor's conduct was coarse, insulting and brutal and had greatly humiliated her in the presence of the other passengers. She recovered a verdict of $750 for compensatory damages, and of $250 for punitive damages. The railroad company appeals.

One defense interposed by the railroad company was that the ticket in possession of Mrs. Fleming by its terms expired on July 12th and that had it transported her upon that ticket it would have been guilty of an infraction of the Federal interstate commerce statute and would have been subject to a Federal prosecution accordingly. It seems clear to us that the learned counsel for the railroad company misconceive their facts. Mrs. Fleming was the beneficiary of no rebate or unusual privilege. She bought and paid for certain transportation at a certain price, the scheduled price, the lawful price, the price at which every other traveler desiring like service could have bought it. Unfortunately for the railroad company it blundered in the manner of ticket it supplied her; with the result that her written or printed ticket did not evidence the true contract. The doctrine generally received and generally fixed in Kentucky is that as between the passenger and the carrier the ticket is a mere memorandum of a contract, the real and true details of which are entered into before the delivery of the ticket. Upon the other hand, the ticket is customarily considered as evidence of the passenger's rights as between him and that servant of the railroad company known as the conductor of the train. L. & E. Ry. Co. v. Lyons, 104 Ky., 23; C., N. O. & T. P. Ry. Co. v. Carson, 145 Ky., 81; Southern Ry. in Ky. v. Hawkins, 121 Ky., 415. Mrs. Fleming's contract, as she actually made it with the railroad company, was a lawful contract, bought at a rate which met every demand of the Federal statute. If the carrier was guilty of any infraction of the Federal law it was guilty of such an infraction in delivering to her a ticket different from that for which she paid. It committed no offense in entering into the lawful contract with her. In any attempted prosecution against it for carrying her on to her destination upon a ticket which (supposedly) had expired it cannot be questioned but that the railroad company could have successfully protected itself by

showing what the true contract was, what was the true consideration paid, and that it in every respect had conformed to its tariff schedule. Upon the other hand, it goes as well without saying that were it indicted charged with selling to Mrs. Fleming the ticket with the earlier expiration date which it delivered to her at the price which it exacted for the ticket, it could have protected itself by showing that the contract actually made with her in every way complied with the statute. In other words, the truth and the justice of the situation would intervene in either supposed case to protect the carrier from the Federal prosecution, the fear of which was urged strongly in the argument of the case. It is to be conceded that neither the carrier nor the passenger can make a lawful contract which violates the provisions of the Federal law demanding equal accommodations and equal privileges and equal rates to all; but the mistaken issual of a ticket, in its terms not conforming to the true, the lawful, contract, does not make an unlawful contract. For the ticket as between the passenger and the carrier is not the sole evidence of the contract; nor, we undertake to say, would it so be considered in a Federal prosecution. It was much argued upon the hearing that it would be a great hardship upon the carriers of the country to subject them to prosecutions in cases like this; but that argument seems. to us to overlook as well the prosecutions to which the railroad company might subject itself if the ticket were held to be the sole evidence of the contract, by mistakes made just in such cases as this. If, for instance, the agent had mistakenly sold this ticket with a time limit of July 25th instead of July 15th, the contract date, at the tariff rate for tickets expiring on July 15th, would the carrier then, however innocent its mistake in fixing the return date, feel that it was justly punished in a Federal prosecution for selling a ticket not authorized by the tariff? The question answers itself. We are not inclined to visit upon the railroads of the State any construction that would be so harsh and so unjust. Upon the other hand and as between the carrier in this case who wrote the contract and the passenger who purchased it, the mistake was that of the carrier; and if one or the other must suffer for that mistake, the sufferer should be the one who made it.

The foregoing discussion in reality is not pertinent to this case if the instruction given by the trial court be

accepted as the correct exposition of the law. By that instruction the jury were told that as a matter of abstract right it was the duty of the conductor to disregard the ticket and require Mrs. Fleming to pay her fare, or in the event of her refusal to do so to require her to leave the train; and that the defendant was not liable in damages therefor. In other words, the ticket presented was treated by the trial court as the absolute, final and only evidence of the contract between the parties and upon it based the conductor's duty to expel Mrs. Fleming from the train in case she did not pay again. The instruction then proceeded to permit a recovery for damage only in the event that the conductor had been rude and offensive in manner and had demeaned himself in a way calculated to humiliate Mrs. Fleming. We do not think this was a correct exposition of the law, but the error was in favor of and not against the appellant. The appellee was entitled to have the jury instructed upon her rights with relation to the railroad company, and not upon the somewhat narrower relation of the conductor's duty upon the erroneous ticket contract. The testimony about the purchase of the ticket and the like, the admission of which is made a subject of complaint by appellant, was not erroneous even upon the view adopted by the trial court, because it was necessary to enable the trial court to find upon what its instruction should be based. Upon our view of the case the evidence was equally competent because it served to make patent the true nature of the contract.

The plaintiff plead her evidence, and complaint is made of that fact. A historical review of the whole matter was stated in the plaintiff's petition. It unnecessarily burdened the record and was not justified by the familiar rules of our code procedure. However, there was nothing in this manner of pleading to prejudice any right of the appellant.

It is complained that the award of $750.00 for compensatory damages is excessive. It is well settled in this State that mortification and humiliation are the objects of compensation in a case like this. Mrs. Fleming was traveling in the nighttime. She was awakened in the late hours of the night and told that if she did not pay her fare she would be ejected from the train. This must have humiliated her greatly. She had to have the porter seek to borrow money for her, and to offer to pledge her personal effects to get the money to save being ejected

from the train. She had to submit herself to the inspection of strangers and especially to that of the one who in the end was good enough to help her. He, especially, asked that he might look at her in order to judge from inspection whether her face bore such evidence of character as to warrant his extending her the accommodation. It is difficult to say just what will compensate a given person for going through any particular unfortunate experience of this nature. The few facts recounted suffice to show that Mrs. Fleming's surroundings were humiliating in the extreme; and we are not prepared to say that for such shame as she suffered the amount of $750.00 is unreasonable.

Complaint is likewise made of the $250.00 award of punitive damages. Mrs. Fleming testified in substance that the conductor unbuttoned the curtain of her berth, put his lantern in her face and in a rough, ungentlemanly and coarse voice told her that the ticket was no good and that she would have to pay her fare; that again, when she had just had time to take off her night dress, the conductor rudely pulled the curtain aside and exhibited her only partly dressed. If these facts are true, if the conductor jerked aside the curtain and exhibited the appellee in a half-dressed condition to the other passengers in the car, or even to the eyes of the conductor himself, he was guilty of conduct such as to justify the instruction upon, and this small award of, punitive damages.

For the reasons given the judgment of the trial court is affirmed.