## Louisville & Nashville Railroad Company v. Sandlin.

(Decided June 5, 1925.)

### Appeal from Breathitt Circuit Court.

1. Carriers—"Ticket" is Mere Memorandum of Contract Between Carrier and Passenger.—"Ticket" is mere memorandum of contract between carrier and passenger, real and true details of which are entered into before delivery of ticket.

2. Carriers—As Between Passenger and Conductor, Ticket is Evidence of Passenger's Rights.—As between passenger and conductor, ticket is evidence of passenger's rights.

3. Carriers—Passenger Given Ticket to Point Less Distant than Destination and there Ejected Held Entitled to Sue Carrier Ex Contractu.—Passenger asking for ticket to particular place, and being given ticket to place less distant, and there ejected from train, may sue carrier for breach of contract.

4. Carriers—Passenger Owes no Duty to Examine Ticket to Ascertain that it Correctly Represents Contract Made.—One making contract with carrier for passage to particular place owes no duty to examine ticket given to ascertain whether it represents contract entered into.

5. Carriers—Passenger Given Wrong Ticket and Ejected Before Reaching Destination Not Required to Pay Additional Fare to Destination for Purpose of Minimizing Damages.—Passenger requesting ticket to particular place, and given one to place less distant, and there ejected, held not precluded from recovering damages for breach by her failure to minimize her damages by paying her fare to desired destination, and suing to recover additional fare so paid, in view of her financial circumstances, which would have rendered completion of trip impossible after such payment.

6. Damages—Duty to Minimize Damages Never Requires Party to do More than Exercise Ordinary Care to that End.—Duty to minimize damages never requires party to do more than exercise ordinary care to that end.

7. Trial—Instruction Containing Erroneous General Statement of Law Held Not Reversible Error, in View of Other Instructions.— In action by passenger given wrong ticket and ejected before reaching her destination, instruction containing general erroneous statement of law, but not requiring jury to find for either party on account of anything said therein, held not to require reversal, where succeeding instructions correctly stated the law and directed findings in accordance therewith.

8. Appeal and Error—Asking of Improper Question Held Not Prejudicial, in View of Answer.—In action by passenger given wrong ticket and ejected before reaching destination, permitting one of defendant's witnesses to be asked whether defendant had offered plaintiff a pass from point of ejection on morning following ejection was not prejudicial, in view of witness' answer that he did not know.

9. Carriers—$500.00 Damages for Ejection of Woman from Train on Dark and Rainy Night Not Excessive.—Five hundred dollars damages to woman ejected from train before reaching destination, for which she had asked ticket, at lonely railroad station in dark and rainy night held not excessive.

WOODWARD, WARFIELD & DAWSON, JOHN MARSHALL, JR., HUNT, NORTHCUTT & BUSH and O. H. POLLARD for appellant.

SOUTH STRONG for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

At the outset of this opinion, it will serve to clarify the situation if we first consider the nature of a railroad ticket. It is the rule in some jurisdictions that a railroad ticket, at least until cancelled, is the contract of carriage complete and self-contained without reference to anything dehors. Appellant places the emphasis of its brief on this theory. The doctrine in other jurisdictions and the one fixed in Kentucky is that as between the passenger and the carrier the ticket is a mere morandum of a contract, the real and true details of which are entered into before the delivery of the ticket. Although the soundness of this view is attacked, yet it is well settled by a long line of decisions in this state, and we see no reason to depart from it. See Illinois Central R. R. Co. v. Fleming, 148 Ky. 473, 146 S. W. 1110; L. & E. Ry. Co. v. Lyons,

104 Ky. 23, 46 S. W. 209; I. C. R. Co. v. Jackson, 79 S. W. 1187. It is also the rule in this state, as established by these cases, that as between the passenger and conductor the ticket is customarily considered as evidence of the passenger's rights. The meaning of this rule is amplified and explained in the Jackson case, *supra*, where the court said:

> "The conductor is absolved from the payment of any damage in ejecting a passenger in accordance with the terms of his ticket, provided that the ejection is not accompanied with unreasonable and unnecessary force or insult; but in such case the passenger's right of action is against the carrier and the agent who gave him the erroneous ticket, or either, as he may elect. The criterion of recovery is limited to compensatory damages, in which is included mortification and humiliation consequent upon the wrongful ejection."

In the Lyons case, *supra,* the court said that the action where the passenger is ejected because he presents a wrong ticket given him by the ticket agent is "essentially and in form *ex contractu,*" and it does not sound in tort as appellant contends.

With these principles in mind, we find that on October 4, 1922, appellee purchased a ticket from appellant's ticket agent at Altro, in Breathitt county, Kentucky. Appellee, a woman in very humble circumstances and of exceedingly limited education, purposed visiting her sick husband who was confined in the state penitentiary at Frankfort. Her neighbors had raised for her a purse of $12.00 to enable her to take this trip. To make it, she had first to go to Lexington, thence to Frankfort with the return trip in the reverse order. She testifies, and in this is supported by one witness, that when she purchased her ticket she asked the ticket agent at Altro for one to Lexington, and gave him therefor four $1.00 bills, which it is conceded is the legal fare from Altro to Lexington. The ticket agent testifies, and in this he also is supported by one witness, that appellee requested a ticket to the first station beyond Jackson. On his asking her if she meant O. K. Junction, she replied in the negative. When he suggested the next station after that—Elkatawa—she said that was the one she wanted, whereupon he filled in with his own handwriting a ticket to that

place, and appellee paid him therefor the sum of 87 cents, the legal tariff for such a journey. Of course, it was for the jury to say which story concerning this transaction it believed. All this transpired about dusk or a little thereafter. Later train No. 2 of appellant came through Altro bound for Lexington. It was the last train until the next day and was not scheduled to stop at Elkatawa. The ticket agent, although he had been such for some four months, says he did not know this, and as there was no evidence to the contrary we must accept his statement. Appellee boarded this train and in due time gave her ticket to the conductor. He says that he called her attention to the fact that it was for a station at which the train did not stop and told her that she would have to get off at Jackson and wait there until the next day for a local train which would stop at Elkatawa. Appellee made no response to the conductor. Indeed she says she heard him make no such statement. He marked on her ticket that it had been used as far as Jackson and returned it to her. In the rush of business at Jackson where the train arrived in the middle of the night, the conductor did not observe that appellee had failed to leave the train. After it had left Jackson, he discovered appellee still in her seat. He says that he told her that she ought to have left the train at Jackson, and that although he had no right to stop at Elkatawa still in order to avoid trouble he would stop the train there in order that she might alight. He says he agreed to do this although he knew he would have to make his excuses to the appellant for such nonscheduled stop. Appellee testifies that no such thing occurred as the conductor says, but on the contrary as the train neared Elkatawa the conductor came to her and told her that she would have to get off and on her inquiry if this stop was Lexington he said that it was not, but Elkatawa; that on her protest that she was bound for Frankfort he replied that her ticket called for Elkatawa and there was where she would have to get off. The conductor says she voluntarily left the train when it stopped at Elkatawa. She says he took her by the arm and led her off. The evidence is clear though that no violence or rudeness was offered her at this point. After she had disembarked from the train she found herself at a lonely station in the middle of a dark and drizzly night in great distress of mind. She says that she crossed a muddy road to a house opposite the station where after

some difficulty she aroused the occupants and asked for shelter. The owner directed her to a nearby house where she was unable to attract the attention of anybody. She returned to the first house and with the assistance of the owner finally got a place for the night. The next morning she was suffering from a sore throat as a result of her exposure and also from some nervousness, both of which were only temporary and of no long duration. The good people of the vicinity made up another purse and she again took up her journey to see her sick husband.

Alleging that the appellant by reason of her purchase of a ticket from Altro to Lexington had entered into an agreement to carry her to that point, but that despite such agreement it and its agents had wrongfully ejected her at Elkatawa whereby she was made sick and nervous and humiliated, appellee brought this suit against appellant and recovered therein a verdict of $500.00. From the judgment entered thereon appellant appeals.

It first insists that the evidence in this case demonstrates that the appellee pleaded one case and proved another, if any was proved. This contention is based on appellant's theory, as stated, that the ticket which appellee secured at Altro was the contract of carriage; that the only agreement appellant made was to carry appellee to Elkatawa, and that her cause of action, if any, was in tort on account of the negligence of the ticket agent at Altro in giving her a wrong ticket. There would be great force in this argument of appellant were its fundamental theory correct, but, as we have pointed out above, the ticket in this State is not the contract of carriage but only a memorandum of the agreement, the real and true details of which are entered into before the delivery of the ticket. Under this rule the appellee, if her version of the facts be true as a jury found it was, entered into a contract of carriage from Altro to Lexington, which contract was breached by her ejection at Elkatawa. Although she had no cause of action against the conductor because as between him and her the ticket controlled, yet, as pointed out in the cases first cited herein, this does not preclude her suing the carrier in an action *ex contractu* for such breach of contract. This is what she alleged and this is what she proved.

In the case of Southern Ry. Co. v. Hawkins, 121 Ky. 415, 89 S. W. 258, it appears that Hawkins was ejected from a train of the Southern Railway Company because

his ticket, through a mistake of the issuing ticket agent, was stamped to expire on a day before its attempted use by Hawkins. In his suit, Hawkins averred that he had purchased a ticket to expire on a day after its attempted use by him and that he had been wrongfully ejected from the train to his damage. There, as here, the railroad claimed that as the conductor had a right to put Hawkins off the train, the latter could not recover for a wrongful ejection, and it was entitled to a peremptory instruction as Hawkins had pleaded one cause of action and proved another. This court, proceeding under the rule developed by the cases first cited therein, rejected both contentions and held that the ejection of Hawkins was as between him and the carrier a breach of its contract of carriage and wrongful, and hence there was no variance between the *allegata* and the *probata*. The same is true of the case before us. Hence we regard the first contention of appellant as without merit.

But it is urged that appellee should not recover here because at the time she purchased her ticket it was her duty to examine it, and that had she done so, she would have discovered at once the mistake of the ticket agent and so prevented the consequent trouble which arose therefrom. Under the state of the pleadings in this case, it is exceedingly doubtful whether or not appellant was entitled to have this contention submitted to the jury under an instruction embodying this idea which it offered, as the answer simply traversed the appellee's petition. But conceding the right of appellant to urge such defense under the pleadings, yet we find both on the evidence and the authorities that appellant was not entitled to such instruction. Appellee testifies that she was a very bad scholar and that she "couldn't read writing no way." There is no evidence in the record to contradict this. As the destination of this ticket was in the handwriting of the ticket agent, it is obvious that an inspection of the ticket by appellee would have apprised her of nothing. Beyond this, however, in the case of L. & N. R. Co. v. Fish, 127 S. W. 519, this court held that one who enters into a contract with a carrier for passage over its railroad owes no duty to examine the ticket given him by the agent to ascertain whether it represents the contract entered into. This case is also reported in 43 L. R. A. (N. S.) 584, where may be found a note collecting the authorities in accord with this Fish case. The case of

McKinley v. L. & N. R. Co., 137 Ky. 845, 127 S. W. 483, is not in conflict with this rule. In this McKinley case the traveler purchased a ticket at Owensboro for Nashville. There were two railroads from Owensboro to Nashville, but she did not indicate her choice. The ticket agent routed her over the L. & N. She went from Owensboro to Henderson over the L. H. & St. L. Railroad, a connecting carrier, we assume from the opinion, to both the L. & N. and I. C. When she got to Henderson she asked the agent there how long it would be before there was a train for Nashville. He told her that there were two trains running to Nashville, but she did not inform him over which road her ticket was routed, nor on which one she wanted to go. She got on the I. C. and when it was discovered her ticket read over the L. & N. she was required to get off the train. Of course, she had no contract of carriage with the I. C. as she had never demanded or asked for a ticket over the I. C., and hence the I. C. was guilty of no breach of contract with her. It is equally obvious that the L. & N. was guilty of no breach of contract as she had never presented herself for carriage over its road. Further, as stated by the court, when it was specifically called to her attention that there were two roads running to Nashville, it then devolved upon her to ascertain and inform herself over which road she was routed. No such facts appear in this case. Only the road of appellant ran from Altro to Lexington. Appellee, if her story be true, specifically asked for a ticket to Lexington. There was nothing suspicious to put her on inquiry to ascertain whether or not the ticket agent had complied with her request. The McKinley case is, therefore, clearly distinguishable.

Appellant says though, that conceding all this, yet nevertheless when appellee discovered on the train that her ticket was only good to Elkatawa it then became her duty to minimize her damages by paying again her fare to Lexington, and suing the carrier for such additional fare that she had to pay. The authorities seem to be well settled that there is no such duty on the part of the passenger in such state of case. In L. R. A. 1918D, page 1032, may be found a note collecting these authorities supporting this rule. The holding in the Fleming case, *supra,* would also seem to reject this contention of appellant. In this case the facts were that appellee purchased a round trip ticket to be good until July 15th, but owing

to the mistake of the ticket agent who sold her the ticket it was made to expire on July 12th. While on her return trip made after July 12th, the conductor threatened to eject her unless she paid the regular fare as her ticket on its face had then expired. Borrowing some money from other people on the train, she complied with the conductor's demand and was carried home. She then brought her action against the railroad company for the wrong thus done her and recovered a verdict of $750.00 for her humiliation and mortification caused by the carrier's breach of contract in threatening to eject her and compelling her to pay again for her passage. It will be observed that in this case the passenger actually did pay the second fare demanded, and yet was permitted to recover on the breach of contract of carriage, the recovery being limited not to what she was compelled to pay as a second fare but to the same measure as would have been applied had she been actually ejected. But however this may be, conceding *arguendo* that appellant's theory on this issue is correct, yet this obligation to minimize the damages when it arises never requires the party to do more than exercise ordinary care to that end. See 17 C. J. 766 to 770. Although there is some dispute in this evidence as to the exact amount of money appellee had with her at the time of her ejection from the train at Elkatawa, yet the maximum sum which she could have had was $8.00. She was very poor and it is not disputed that her neighbors had raised a purse of $12.00 which just covered her round trip railroad fare to Frankfort with a very small margin for living expenses in the meantime. If her story be true, she had already spent $4.00 of this for her ticket to Lexington. She also claims that she had made other expenditures for food. But eliminating this and granting that she still had $8.00 left, had she paid the additional fare demanded from Elkatawa to Lexington, which would not have been less than $3.00, she would have had but $5.00 left. Under such circumstances had she gone on to Lexington, she would have then had either to return home which would have taken an additional $4.00 or to throw herself on the charity of that community. Had she gone to Lexington she would have had but $5.00 left, $4.00 of which would have been needed to return to Altro. The remaining $1.00 would not have gotten her to Frankfort and back again to Lexington. It would have been a foolish thing to do to have gone to

Lexington only to have had to turn around and come back. Appellant cannot ask that she should have done this foolish thing or be stranded in a strange land without friends or funds. Therefore, it is very plain that under the facts of this case, no duty to pay an additional fare and thus minimize the damages arose, as we are clearly of the opinion that the reasonableness of the situation here required appellee to do exactly what she did do.

The next two complaints of appellant deal with the instructions of the court and the admission of testimony. The first instruction is simply an exposition of the law and in several respects is erroneous. Rather queerly, however, the court did not predicate the rights of either party on this instruction. By instruction No. 2 the jury were plainly told that if appellee called for and paid for a ticket from Altro to Lexington and was caused to leave the train at Elkatawa then the law of the case was for her and the jury should so find, and by the fourth instruction the jury were also told that unless the appellee purchased and paid for a ticket from Altro to Lexington the law of the case was for the appellant. In deciding this case the jury could only have based a verdict for either party on the second or fourth instruction, which under the theory prevailing in this state that the ticket is not the contract of carriage but only a memorandum thereof, correctly submitted to it the real issuable point in this case. Hence the first instruction though erroneous was not prejudicial because the jury were not told to find for either party on account of anything said in that instruction.

With regard to the incompetent evidence alleged to have been admitted, the complaint as to most of it is again based on appellant's theory of the nature of a ticket, and that being erroneous it is obvious that the complaint is unfounded. Other parts of the evidence objected to as well as appellant's objection to the third instruction are based on the theory that it was the duty of the appellee to minimize her damages which as we have seen is also untenable.

Appellant also contends that one of its witnesses was improperly asked whether or not appellee had been offered a pass by appellant from Elkatawa to Lexington on the morning following her ejection, but as this witness answered that he did not know whether or not she had, it is obvious that there is no merit in this contention, because there is no evidence that any ticket had been

offered.    There are other objections to evidence offered but as it was of trivial importance though some of it incompetent, its submission was not prejudicial to any substantial right of appellant.

Lastly it is urged that the damages are excessive. It must be admitted that they are large; but the facts are that appellant was discharged at a very lonely railroad station in the middle of a dark and rainy night.   She was compelled to plod around in the mud for some little time before she found shelter.   She was made sick and nervous and suffered some humiliation and mortification. The sum of $750.00 as compensatory damages was allowed in the Fleming case *supra*, where the injuries were not as great as here, and although this verdict is quite ample we are not able to say that it is so excessive as to appear to have been given under the influence of passion or prejudice.

Perceiving no error prejudicial to appellant's substantial rights, the judgment of the lower court is affirmed.