## Louisville & N. R. Co. v. Gibson.

(Decided Oct. 24, 1933.)

ASHBY M. WARREN and LOW & BRYANT for appellant.

GOLDEN, GILBERT & GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

M. T. Gibson brought this action against the Louisville & Nashville Railroad Company to recover damages for wrongful ejectment from the train on which he was a passenger. From a verdict and judgment in his favor for $500, the railroad company appeals.

The facts are these: Stilson is a nonagency flag station on appellant's Straight Creek branch, and is one mile from Pineville. Logan's Switch and Cary are also nonagency flag stations on the same branch, and are located two and three miles from Pineville, respectively. On the occasion in question, Gibson, a miner, who was on his way to work, boarded the train at Stilson for the purpose of going to Cary. The fare from that point to Cary was 10 cents. According to Gibson's evidence he offered the conductor a dime, which he refused to take. At the time he offered the conductor his fare, the conductor asked him where he was going, and he replied, "To Cary." The conductor then said: "That will not get you by, you damned fellows will have to get off. Stop the train and put these damned fellows off." He had not said or done anything, but the conductor acted like he was mad. He was put off the train at Logan's Switch. From there he walked to the mine, which was about two miles away. According to train schedule he would have reached the mine at 7 o'clock, but when he arrived it was 25 or 30 minutes after that time. There were several other persons in the coach who heard and saw what the conductor did. The talk of the conductor made him feel embarrassed, like he had done something wrong when he had not, and made him feel ashamed to face the public. It was dry weather at the time he was put off, and the road from Logan's Switch to Cary was fairly good. According to Oliver Hobbs, Gibson and three or four others got on at Stilson. When the conductor came up and asked for his fare, Gibson offered something that he did not see. The conductor asked where Gibson was going, and Gibson told him. The conductor then said: "That

don't get you anywhere, I am going to put all of you damn fellows off the train.'' The conductor seemed to be pretty hot. Noah Hobbs, who was on the train, testified that when Gibson offered the conductor a dime, the conductor said: "Hell, that don't get you anywhere.'' Gibson said: "This is only a dime, this is all I aim to pay.'' The conductor kept arguing with him, and said: "I'll put you damn fellows all out here.'' The train then ran to Logan's Switch and the conductor said: "Stop this train here until these damn fellows every one gets off.'' John Wilkerson's evidence was practically to the same effect.

On the other hand, C. C. Thomas, the conductor, testified as follows:

"A. Well, I was leaving the passenger station at Pineville, I started out taking up my tickets and went square thru the train and then I returned back, a gentleman or two offered me cash fare, I told them I would have to charge them train rates, which was 15 cents in addition to the regular ticket rate, they refused to pay the money, then offered me 11 cents, I think one fellow offered me 22 cents.

"Q. Tell what happened at Stilson? A. I was into an argument with them for the train rate.

"Q. Go on? A. And was in the argument when the train approached Stilson and was leaving Stilson, I saw I wasn't going to get the money off of them and told them they would have to get off, went on down to Logan's Switch, and in a minute after I left Stilson I came back in the coach, a gentleman handed me out some money, I took it for granted he was one of the men I had, that had refused me. You take these men in miners clothes they all resemble. (Plaintiff objects to part of answer about men in miners clothes all resemble; sustained; defendant excepts.)

"The Court: Tell us the facts.

"A. I refused the money, this gentleman, if he was the one that offered me the money, I refused it, I thought he was one that got on at Pineville and when I got down to Logan's Switch I told them they would have to get off, which they did.

"Q. Did Mr. Gibson when he offered you that money make any explanation where he got on, that he got on at Stilson and didn't belong to this other bunch you were having trouble with or anything like that? (Plaintiff's objection overruled; exception.) A. No, sir, he didn't."

He further testified that he was not mad at all, and did not swear or curse any of them, but might have said, "You darned fellows get off," or something like that.

The first ground urged for reversal is that the petition was defective, and the court erred in overruling the demurrer thereto. That part of the petition called in question reads as follows: "That on or about the 15th day of August, 1930, he (plaintiff) was residing near to a 'Flag Station' on defendant's line of railroad in Bell county at which its passenger trains made regular stops to take on and let off passengers, but it had no ticket office thereat and that in due course of its business and dealings with passengers including this plaintiff it was the custom and practice for the said passengers to pay cash fare and that on said date and in keeping with said practice and custom he got aboard one of these passenger trains en route to Cary, Kentucky, and tendered and offered to defendant's conductor in charge of its said train the customary and usual fixed price for being conveyed from Stilson to Cary, Kentucky. * * *" The complaint of the petition is that it does not allege that Stilson is a flag stop, or that no ticket agent is maintained there, or that appellee boarded the train at Stilson, or even that Stilson was the flag stop near which appellee resided. It therefore is argued that for anything in the petition to the contrary appellee might have boarded the train at Pineville, and have tendered fare for less than was proper for his journey. While it is true that appellant objected to appellee's affirmative answer to the question, "Stilson, the station from where you lived to Cary?" there was no objection to the testimony of four other witnesses that appellee got on the train at Stilson. Indeed, the evidence that he got on at Stilson and tendered the correct cash fare to Cary is uncontradicted. We therefore conclude that even if the petition was defective in not alleging in direct terms that appellee got on at

Stilson, the defect was supplied by evidence to which there was no objection, and was cured by the verdict.

Appellant's main contention is that the verdict is excessive. In support of this position it relies on Louisville & N. R. Co. v. Breckinridge, 99 Ky. 1, 34 S. W. 702, 17 Ky. Law Rep. 1303, where a verdict of $500 was held excessive; on Lexington & E. R. Co. v. Lyons, 104 Ky. 23, 46 S. W. 209, 20 Ky. Law Rep. 516, where a verdict of $260 was held excessive; on Louisville & N. R. Co. v. Fish (Ky.) 127 S. W. 519, 43 L. R. A. (N. S.) 584, where a verdict of $500 was held excessive; on Cincinnati, N. O. & T. P. R. Co. v. Carson, 145 Ky. 81, 140 S. W. 71, where a verdict of $400 was held excessive; and on Camden Interstate Ry. Co. v. Frazier, 97 S. W. 776, 30 Ky. Law Rep. 186, where a verdict of $500.05 was held excessive. An examination of these cases will show that in each instance the passenger ejected was not subjected to any indignity or insult by the conductor. Here the situation is different. There was evidence that the conductor was angry; that he said to appellee, "That will not get you by," or: "Hell, that don't get you anywhere. You damn fellows will have to get off. Stop the train and put these damn fellows off." Since, in view of this language, which was spoken by the conductor in the presence of other passengers and is clearly abusive and insulting, appellee was entitled to recover for mortification and humiliation of feeling, we cannot say that the verdict is excessive. Indeed, in Chesapeake & O. R. Co. v. Francisco, 149 Ky. 307, 148 S. W. 46, 42 L. R. A. (N. S.) 83, where there was no wrongful ejection, but the conductor cursed and abused the passenger, we upheld a verdict for $600.

Judgment affirmed.

Whole court sitting.

Rees, C. J., and Dietzman and Thomas, JJ., dissenting.