## Southeastern Greyhound Lines v. Klatt.

Oct. 2, 1945.

506

R. W. Keenon for appellant.

Reid Prewitt and F. C. Bryan for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—
Affirming.

This is an appeal from a judgment of the Menifee circuit court entered upon a verdict awarding appellee $500 damages allegedly resulting from the wrongful act of appellant in refusing to receive him as a passenger upon one of its busses from Mt. Sterling in Montgomery county to Wellington in Menifee county. The principal ground urged for reversal of the judgment is the alleged error of the court in refusing to sustain appellant's motion for a directed verdict in its favor. It is argued that the proof is overwhelming to the effect that appellee was intoxicated on the occasion in question, and that the driver of the bus was justified in rejecting him as a passenger under the rule of the company then in effect, which reads: "Objectionable Persons: (a) Issuing Carriers reserve the right to refuse to transport a person under the influence of intoxicating liquor or drugs, an insane person, or one who is incapable of taking care of himself, or herself, or whose conduct or condition in the judgment of the Issuing Carrier, is such or is likely to become such as to make him or her objectionable to other passengers or prospective passengers."

The appellee, Henry Klatt, is a carpenter and resides near Wellington in Menifee county. His hearing is bad, and he normally speaks in a loud tone. On August 22, 1944, he went to Mt. Sterling in a bus accompanied by his son who is deaf. The purpose of the trip was to have the boy examined by a physician. He arrived in Mt. Sterling about 11 a. m., went with his son to a physician's office, ate lunch, visited a few stores, and then went to the bus station and purchased two tickets to Wellington. The bus was traveling from Lexington to Paintsville, and was scheduled to arrive at Mt. Sterling at 4:13 p.m. and to leave for Paintsville about five minutes later. It was due at Wellington at 5:15 p. m. Arnold Patrick, driver of the bus, refused to permit appellee to enter the bus because he believed that he was intoxicated. The Klatt boy was permitted to enter. Patrick testified as follows:

"Q. Do you remember seeing Mr. Klatt when you arrived at Mt. Sterling? A. Yes.

"Q. Was your bus crowded that day? A. Yes.

"Q. Did many people get off at Mt. Sterling? A. Quite a few.

"Q. Did many people get on? A. Yes.

"Q. Where did you first notice Mr. Klatt? A. Back in the back of the crowd.

"Q. What attracted your attention to him? A. His loud talk.

"Q. What do you mean? A. He was making brags he was going to get on the bus back in the crowd. I was listening to him.

"Q. What was he doing? A. He was still talking. I asked him how much he was drinking. He gave me to understand he didn't drink. He flew all over me.

"Q. Why did you refuse to let him on? A. I thought he was drinking.

"Q. Why. A. I smelled it on him.

"Q. What was he doing or saying? A. His loud talking and cursing back in the crowd. He was making brags he was going to get on."

Ray Patrick, ticket agent for appellant at Mt. Sterling, testified that he sold appellee a ticket. Appellee didn't seem to be normal when he came to the ticket window. He was talking in a loud manner, and the witness was of the opinion that he was intoxicated. Curtis Holland, a taxi driver, was at the station and saw appellee. He testified that Klatt "wasn't normal," "he was talking loud and boisterous." Miss Roberta Carter, a passenger on the bus from Lexington to Mt. Sterling, testified that as she got off the bus she heard Klatt talking in a loud voice, and in her opinion he was under the influence of liquor. Appellee testified that he had not taken a drink of intoxicating liquor during the day, and that he never drank intoxicants except beer occasionally. After he was refused passage on the bus, he went to the police station and saw Goebel Greer, a member of the police force. Greer cashed his check for $10, and he hired a taxi for $8 and was driven to his home

in Menifee county. Greer and the taxi driver testified that appellee was sober. They smelled no liquor on his breath. Thus it will be seen that the evidence on the crucial question in the case was conflicting. Appellee testified positively that he was not under the influence of liquor, and had not taken a drink of any kind of intoxicants during the day. On this point he is corroborated by the testimony of two reputable witnesses who saw him and had dealings with him a few minutes after the transaction at the bus station. He also denied that he was boisterous or guilty of conduct that would make him objectionable to other passengers. Most of the alleged loud and boisterous talk referred to by appellant's witnesses occurred after appellee had been charged with drunkenness by the driver of the bus and permission to enter the bus had been refused.

Where the evidence is conflicting, it is not for us to interfere with the finding of the jury merely because their finding is not supported by the preponderance of the evidence. In Cincinnati, N. O. & T. P. Ry. Co. v. Richardson, 152 Ky. 814, 154 S. W. 403, 405, it was said: "If we should adopt the rule of weighing the evidence for ourselves and deciding for ourselves, independently of the jury, questions of fact, the jury, as a part of the machinery of the court, would be of small importance."

This rule has not been altered by the rule announced in Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877, cited by appellant. The recovery in the case before us does not rest upon a mere scintilla. The testimony of appellee and his witnesses was full and explicit, and was in direct conflict with the evidence introduced by appellant.

Appellant complains of the instructions, but apparently they were copied from the instructions directed to be given in Chesapeake & O. R. Co. v. Gatewood, 155 Ky. 102, 159 S. W. 660.

It is next insisted that the verdict is excessive. The jury has a wide discretion in awarding damages for humiliation and injured feelings. It may consider the ignominy endured by a person who is refused passage on a common carrier where the refusal is accompanied by abusive or insulting language or an accusation of drunkenness as in the present case. In Louisville & N. R. Co.

v. Gibson, 250 Ky. 814, 64 S. W. 2d 163, the language used by the representative of the carrier in ejecting a passenger was less insulting than the language claimed to have been used in the present case, and it was held that a verdict for $500 was not excessive. Asa Little and probably one other witness were permitted, over appellant's objection, to testify as to appellee's reputation for sobriety, and complaint is made of this ruling of the court. The evidence had a bearing on the question of damages, and was competent.

The judgment is affirmed.