## Thomas Forman Co. v. Owsley County Board of Supervisors.

## Chesbrough et al. v. Same.

(Decided Feb. 12, 1937.)

BEATTY & BEATTY and ROSE & STAMPER for appellants.

CHARLES L. SEALES for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming in part and reversing in part.

Appellant in each of the above appeals is the owner of tracts of timbered land in Owsley county, and matters presented involve the assessments of the lands for 1936 taxation. Each owner upon final assessment, appealed from the alleged action of appellee to the quarterly court, thence to the circuit court and finally to this court.

It is alleged that the Forman Company filed its assessment list as of July 1, 1935, with the tax commissioner of Owsley county, listing 9,854 acres of land at a total valuation of $123,000. Later the county commissioner, claiming authority to do so under section 4053, Ky. Stats., raised the value to $161,000. It is charged that such increased valuation was made without notice to the appellant. It is not pleaded, but appears that the commissioner returned appellants' list to the board of supervisors for its action. Appellant says that on February 29, 1936, it was notified to appear before the board to show cause why its lands should not be raised by an amount of $9,000 "in addition to the raise made" by the commissioner, which would have increased the value to $170,000. It appeared by attorney and objected to the proposed raise, insisting that the board should assess at the amount fixed in its return, namely, $123,000. The board overruled its objections, and while it did not put on the proposed raise of $9,000, it did raise the commissioner's figures by $4,000, thus making the final assessment $165,000.

It is asserted that the increase in values made by the tax commissioner is void, because (1) the same was made without notice as required by section 4053, Ky. Stats., and (2) because the board heard no evidence as to the fair value as provided by section 4120, Ky. Stat-

utes, and that it was assessed at a value greater than its fair value and not uniform with other lands of like quality and kind.

In the Chesbrough case the land was owned by the heirs of Frank Chesbrough; this tract containing 944 acres adjacent to the Forman lands. From the pleading we gather that the owners did not list, nor attempt to list, this tract for assessment in 1935. The commissioner listed it at $22,000. It is then alleged that the board, "in supervising and equalizing the taxable property" for the year 1936, assessed the tract at the same amount, which they say is excessive, unfair, and not uniform. The Chesbroughs then allege, in about the same language used in the Forman petition, the inaccessibility of the timber to a market, its deterioration, and likewise compare the assessed values of other timber lands in the same county, at an average, as they both say, not exceeding $7 per acre, thereby showing lack of uniformity as required by the Constitution.

The board answered each petition. In the Forman case they denied that their valuation of the land was unfair, excessive, or exorbitant; alleged that the tax commissioner of Owsley county did not receive any assessment from the plaintiff until long after "he had taken the assessment from the list of previous years," and that the value fixed for 1936 was the same as fixed by plaintiff for preceding years. They then generally allege that the plaintiff's lands are "well timbered and of greater value than adjacent lands." To the Chesbrough petition the denial was in substance the same as in the Forman case, but it is alleged that appellants received notice of the action of the board and made no complaint. We need not observe the pleadings any too closely, since it will appear later that the only question here is: Were the tracts of land given a higher value than a fair cash value?

In the quarterly court the two cases were heard properly without the intervention of a jury, the court upholding the board's action in assessing the Forman property at $165,000 and took no action on the assessment of the Chesbrough tract. When the appeal came on to the circuit court, the issues being formed by the pleadings above mentioned, the court impaneled a jury which, after hearing the proof, returned a

verdict fixing the value of the Forman land at $162,000, a reduction of $3,000 from the board's assessment, and in the Chesbrough case a verdict for $20,000, a reduction of $2,000 from the commissioner's and quarterly court's values. On these two verdicts the court entered judgments, and both parties have appealed on one record under an order of consolidation entered in the lower court.

The section directing notice, relied upon by appellant, provides:

"If the value fixed by the assessor be greater than that fixed by the taxpayer it shall be the duty of the assessor to notify the taxpayer at the time of the assessment the amount of such increase and of the time and place of the meeting of the board of supervisors. The assessor shall report to the board of supervisors a list of all taxpayers in the county whose tax lists have been added to or increased by him after receiving them from the hands of the taxpayer, together with a short statement." Ky. Stats. sec. 4053.

As said, it does appear that the action of the commissioner was without notice, but by appellant's petition it develops that it did receive notice of the proposed raise, and it is alleged that appellant appeared before the board "and made objections to the said Board to the raise placed on plaintiff's property by the Commissioner in excess of $123,000 and asked said Board to take off said excess over and above $123,000, as listed by plaintiff, which the Board declined and refused to do." Plaintiff also objected to any additional raise of its property.

Since it is apparent that the provision as to notice in section 4053, Ky. Stats., is to give the aggrieved taxpayer opportunity to appear before the board, and since this taxpayer did appear and urged the reduction of the excess placed on the property by the commissioner, as well as contending against any further raise, the taxpayer has not been prejudiced by the alleged failure of the commissioner to perform a duty placed upon him. All its rights and remedies under the law were preserved, and since it has taken advantage of same, we cannot see that the alleged failure of notice

has worked prejudice to any right vouchsafed the taxpayer. Ball, Sheriff, v. P. V. & K. Coal Company, 235 Ky. 445, 31 S. W. (2d) 707.

In Burnside Supply Co. v. Burnside Graded Common School, 260 Ky. 482, 86 S. W. (2d) 160, 162, we held lack of notice from the board of supervisors of a raised valuation was fatal, and the raise void for want of notice, thereby inviting and authorizing an injunction; but we quoted from Durbin v. Ohio Valley Tie Co., 151 Ky. 74, 151 S. W. 12, 13, wherein we held that while knowledge of a raise in assessment did not dispense with necessity of notice, "If however, he had actually appeared before the board of supervisors for the purpose of securing a reduction, this would have dispensed with the necessity for notice, as the entry of an appearance by a party to an action dispenses with the necessity for the service of process."

As noted before, the appeals from the actions of the board went first to the quarterly court and thence to the circuit court, where a jury was impaneled to decide the question at issue. No motion was made, in so far as the record discloses, for a jury, nor is there complaint now made by either party that a jury was impaneled, sat, heard the evidence, and returned verdicts. We express the opinion that the matter was triable by the court without a jury, and this is true even though there appeared a triable question of fact. This character of proceeding is what may be termed a "special proceeding," to all intents and purposes similar to a proceeding by a statutory officer to assess omitted property. No constitutional right to a trial by a jury exists. It is unlike cases where at the common law a jury trial was customarily had. Here the whole machinery for the correct assessment of property is fixed by the statute, which does not provide for a jury trial.

In City of Covington v. Shinkle, 175 Ky. 530, 194 S. W. 766, we were dealing with the assessment of omitted property, undertaken by a statutory officer under provisions of statutes similar to those under which the present proceedings were had and said:

"It may further be said that in a proceeding of this character the judge of the county court does not act in a judicial capacity, but in a ministerial capacity, and as such is only one of the agen-

cies provided by law for assessing property for taxation. His judgment, however, is the judgment of a court, and to the extent of determining whether property has been assessed or omitted and its value, he acts judicially, and the same rule would apply to the circuit court upon an appeal from a judgment of the county court.''

Citing Stearns Coal & Lumber Co. v. Com., 167 Ky. 51, 179 S. W. 1080, and numerous other cases.

However, as we view the case on the merits, the form of procedure is of no present importance, since a consideration of the merits and the result would be the same had the procedure been otherwise with the same result.

Eleven witnesses were introduced for appellants and were questioned as to the fair market values of the respective tracts of land, and on this question the average value fixed by these witnesses was $89,084, an approximate average of $9 per acre. These values were fixed by taking the value of the land, the value of the land with the timber, and then combining the two.

These witnesses, in accord, testified as to the inaccessibility of the timber to a market. We need not recount it. It was shown that a great deal of the timber had rotted; that fires on several occasions had destroyed much of it. The witnesses for appellant evidenced a fair knowledge, particularly of the Forman property, and of the market values thereof.

The proof as to lack of uniformity was shown by a comparison of the assessed values of other lands of similar character, with the values of the lands in question as fixed by the assessing authorities. This evidence, not any too clear but not successfully disputed, tended to show that the average assessment per acre of other lands in the county assessed in 1935 was at the rate of $8 per acre; that the average of the lands in the immediate vicinity of the lands in question (Buffalo precinct) was $15.70 per acre. The board had fixed these per acre values, respectively, at approximately $16.50 and $23 per acre, a discrimination in the one case of $5 and in the other at about $7 per acre.

Without carrying these comparisons further, it may be sufficient for the purpose here to point to the evi-

dence offered by the appellees. Only one witness was introduced, he being a member of the board which made the raise on the Forman property, and disregarded the commissioner's assessment of the Chesbrough land. He did not testify to a single fact, which could, even by a stretch of the imagination, aid the court (or jury) in reaching a reasonable conclusion on the issue as to whether the board had assessed these properties, or either of them, at a fair market value, or as to whether there had been any attempt at reaching uniformity or equalization of assessments. In fact, it was, as we said of proof of the board in Atlantic States Coal Corp. v. Letcher County, 246 Ky. 549, 55 S. W. (2d) 408, of no probative value.

The witness said that the board put on the valuation of $16.50 per acre on the Forman land, because it looked over the land and thus valued it. This witness stated that in putting the estimate on the land the board "estimated" the valuation on the rest of the land in the neighborhood, "the rest of Buffalo Creek as per lists, at about $191,000, and that the Forman land was about half of the creek." He does give his estimate of the value of the Forman and Chesbrough properties as, "Six Dollars per acre, I guess, and on that containing timber I guess at about $22.00, something like that. We fixed them the fairest we could. We left the Chesbrough land just the way we found it. I don't believe we compared the assessment of the Chesbrough land with previous years' assessments."

On cross-examination the witness demonstrated such a lack of knowledge of values, equalization, and uniformity of assessments, as did not, to say the least, add to the effect of his direct evidence. While he did say the board had former assessment lists before it, it is nowhere shown what their inspection, if any, evidenced.

Upon a careful survey of both appeals, we have concluded that it is not necessary for us to go into the matter of lack of uniformity in the assessments of either of the tracts as compared to lands of like quality and character in Owsley county, since it is sufficient for us to, and we do determine that the lands in question were according to the proof, assessed at a greater market value than was justifiable. Taking up the Ches-

brough case first, it seems to us that their appeal should have been dismissed on the face of the pleadings and the proof, though no motion looking to that end was suggested.

It will be noted that they make no claim of lack of notice of the fixing of the value of their lands by the commissioner. It may be assumed in the absence of such claim that the assessing officer did his duty. It appears from the proof that the board had little else or nothing before it with regard to the values of the Chesbrough tract. In fact, it appears from the proof that they gave no consideration to the value as fixed by the commissioner, and it is highly probable that the owners, or some one for them, gave in the values as fixed by the commissioner, and if there was any proof before the board it went only to the question of lack of uniformity. The attorney who appeared before the board for the Forman Company, and who also represented the Chesbrough heirs, admitted a lack of familiarity with the Chesbrough tract, except in a general way.

We held in Hyden v. Breathitt County Board of Sup'rs, 244 Ky. 505, 51 S. W. (2d) 441, that a taxpayer receiving notice that the board has tentatively raised an assessment, if feeling aggrieved, must produce evidence to convince the board of its error, and upon his failure the board could from such proof as it may have had before it, make the tentative assessment final. Ky. Stats., sec. 4120. Here, of course, there was no raise and it is not difficult for us to conclude from appellants' pleadings and the proof that appellant must have had notice of the Commissioner's action and that no objection was made thereto.

In regard to the Forman case, it is clear from the pleadings that the utmost from which the company sought relief through all the proceedings was the action on the part of the various taxing tribunals in assessing their property at more than $123,000, the value fixed by the company in its assessment list. In all fairness the company ought not to have asked, nor to now insist on greater relief. However this may be, from a survey of the evidence we are inclined to the opinion that the value as fixed by the company may be said to represent the fair market value of the property. We are not to be confined in estimating the fair market value to the

average of the consensus of the ten apparently disinterested witnesses who testified on this point. It is clear from the evidence that the value as fixed by the company in the assessment list, even though it may have been filed after the commissioner had fixed the value, was no doubt well considered. Ky. River Coal Corp. v. Knott County, 245 Ky. 822, 54 S. W. (2d) 377; Davisworth v. Wright, 229 Ky. 572, 17 S. W. (2d) 756.

Some of the values fixed by witnesses ran as high as $15 per acre; many of them at $12. We might, if we chose, take the highest value fixed, particularly in view of the slight proof of the existence of coal and oil on the land, and from all the proof as to values conclude the valuation fixed by the Forman Company to be fair.

As to the Chesbrough valuation, the proof was not as well developed as it was with relation to the Forman tract. In a general way it was the same. It does appear that in proportion to the acreage of the Forman and Chesbrough tracts that the latter had more timbered land. We recognize that to let the Forman property stand at a valuation of $123,000 and the Chesbrough land remain at $22,000 would result in quite a difference in valuation per acre. To let the latter stand at $20,000, the amount fixed in the judgment from which the appeal is taken, would also leave some difference, which, as we have shown, may have some justification. However, since we have shown that the Chesbroughs do not here show satisfactorily that they are entitled to the relief they now seek, we are of the opinion that the nearest we can approach to an equitable and fair valuation, under the circumstances, is to affirm the judgment below as to them.

Therefore, the judgment in the Chesbrough appeal is affirmed; and the Forman judgment is reversed, with directions that the court set same aside and certify its assessment at $123,000.