KENTUCKY COMMISSION ON HUMAN RIGHTS and Donna Cooper, Movants,

v.

Alasdair FRASER d/b/a Bonanza Sirloin Steak Pit, Respondent.

Supreme Court of Kentucky.

Dec. 15, 1981.

## OPINION OF THE COURT

This case concerns the constitutionality of KRS 344.230(3)(h), which authorizes the Kentucky Commission on Human Rights to award compensatory damages for embarrassment and humiliation caused by unlawful discrimination.

The movant, Donna Cooper, was hired as a food service worker in the respondent Fraser's restaurant in January of 1976. Shortly thereafter she learned that she was pregnant. In February of that year she was fired. In June of 1976 she filed a complaint with the Kentucky Commission on Human Rights alleging that she was terminated because of her pregnancy, and therefore her sex, in violation of KRS 344.-040. A hearing was conducted in November of 1976, at which the evidence established that Mrs. Cooper was terminated because of her pregnancy. The evidence also indicated that Fraser, the respondent, offered leaves of absence to other employees with temporary disabilities, rather than terminating them.

In January of 1977 the Commission found that the respondent had violated KRS 344.-040 and ordered him to pay $1,000 in damages to Mrs. Cooper for humiliation and embarrassment pursuant to KRS 344.-230(3)(h).

Respondent appealed, as provided by the statute, to the Madison Circuit Court, which reversed the Commission's decision. The Court of Appeals affirmed, and adopted the circuit court opinion in its entirety. We granted discretionary review.

The statute in question is part of the Kentucky Civil Rights Act, KRS Chapter 344, which provides a detailed procedure for the consideration of discrimination complaints. KRS 344.200, *et seq.* Written complaints of alleged discrimination are investigated by the staff of the Commission on Human Rights, after which, if "probable cause" is found, resolution is sought through conference and conciliation. If no agreement is reached, the Commission conducts a full hearing pursuant to KRS 344.-210, .220 and .230. If the Commission finds that a violation has occurred, it may impose any of several sanctions, including cease and desist orders, reinstatement of employees, admission of employees to training programs, rental of property to an individual, and payment of damages to an individual. It is this last provision for the award of damages which is challenged here. The statute provides that any party aggrieved by the Commission's action may seek judicial review in circuit court where awards of damages may be modified or set aside. Further review is available in the Court of Appeals. KRS 344.240.

Four issues are raised on this appeal: (1) Whether KRS 344.230(3)(h) allowing the Commission to award compensatory damages for embarrassment and humiliation in discrimination cases unconstitutionally denies the right to trial by jury; (2) Whether the statute is an unconstitutional usurpation of judicial power; (3) Whether the Court of Appeals improperly imposed "preponderance of the evidence" as the standard for review of the Commission's findings, and, (4) Whether the evidence in this case is sufficient to support the Commission's findings. We will discuss them in that order.

## I

### TRIAL BY JURY

The Court of Appeals held that the statute violates the seventh amendment to the United States Constitution and Section 7 of the Kentucky Constitution, both of which provide that the right of trial by jury shall be preserved inviolate.

The United States Supreme Court has interpreted the right to trial by jury to mean the right which existed in suits under the common law in 1791, when the amendment was adopted. Neither the seventh amendment nor Section 7 of the Kentucky Constitution creates a jury trial right. Both, by their terms, simply preserve that right as it already existed under the common law. *Atlas Roofing Co., Inc. v. Occupational Safety, Etc.*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). Because the right to be free from discrimination based on race, color, religion, national origin, sex, and age is a creature of statute and not a common-law tort, it does not fall within the scope of the right to trial by jury preserved by the seventh amendment and by Section 7 of the Kentucky Constitution. *Atlas, NLRB v. Jones and Laughlin, supra.* The statute which creates a right can prescribe a proceeding for adjudication of that right in an administrative forum without a jury trial. *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). The applicability of the seventh amendment depends on the nature of the right and the nature of the forum; where a right is created by statute and committed to an administrative forum, jury trial is not required. *Atlas, supra, Curtis, supra, Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). Kentucky has adopted a similar rule. *Thomas Forman Co. v. Owsley County Board of Supervisors*, 267 Ky. 224, 101 S.W.2d 939 (1937); *Stearns Coal & Lumber Co. v. Commonwealth*, 167 Ky. 51, 179 S.W. 1080 (1915). For these reasons we hold that KRS 344.230(3)(h) does not unconstitutionally deprive the respondent Fraser of his right to a jury trial.

## II.

### USURPATION OF JUDICIAL POWER

The Court of Appeals found that the Commission's assessment of damages for humiliation and embarrassment was unconstitutional for lack of a measurable standard by which to guide the Commission's deliberations. The same issue is raised in the companion case of *Kentucky Commission on Human Rights and Clay v. Barbour*, 625 S.W.2d 860 (Ky.1981), also decided today. Movant argues that the grant of authority to the Commission to assess such damages is not an unconstitutional delegation or usurpation of judicial powers. We agree.

The general test for delegation of powers to an administrative agency in Kentucky is that of safeguards, procedural and otherwise, which prevent an abuse of discretion by the agency. *Butler v. United Cerebral Palsy of Northern Kentucky*, 352 S.W.2d 203 (1961). In the present case, we find sufficient safeguards (1) in the presence of agency regulations, 104 KAR 1:010 *et seq.*, (2) the provision for a full due-process hearing, KRS 344.200 *et seq.* and 104 KAR 1:020, (3) the agency's experience in making similar determinations, and (4) the provision for judicial review, KRS 344.240, to uphold the statute.

In so holding we are not unmindful of the tension between judicial review as a primary safeguard against abuse of discretion, and the fact that the statutory standard of review, that of a "clearly erroneous" finding, KRS 344.240(2), narrows the scope of review. Suffice it to say that courts are not required by the "clearly erroneous" standard to uphold arbitrarily high or factually unfounded assessments of damages for humiliation and embarrassment.

The mere fact that the Commission is involved in adjudication does not in itself render the statute unconstitutional as a usurpation of judicial power. Administrative agencies are frequently involved in the adjudication of disputes (Worker's Compen-

sation, Unemployment Compensation, reparations proceedings before the Interstate Commerce Commission, and the like). *See, Atlas, supra, NLRB v. Jones & Laughlin, supra.* Where the statute adequately defines the prohibited conduct, administrative bodies may ascertain the facts and administer the law. *Kentucky Alcoholic Beverage Control Bd. v. Jacobs,* 269 S.W.2d 189 (Ky.1954). Such acts of administrative bodies are not an unconstitutional usurpation of judicial power where judicial review is available, *Keller v. Kentucky Alcoholic Beverage Control Bd.,* 279 Ky. 272, 130 S.W.2d 821 (1939). The combination of statutory guidelines as to prohibited conduct, availability of a due process hearing, and provisions for judicial review serve to circumscribe the agency's area of discretion within constitutional limits. In Kentucky and elsewhere, this authority of administrative bodies extends to the determination of liabilities between individuals in cases such as *Wells Elkhorn Coal Co. v. Vanhoose,* 220 Ky. 381, 295 S.W. 464 (1927), a worker's compensation case. The substantial trend of authority extends administrative powers of adjudication to encompass the award of damages. *Jackson v. Concord Co.,* 54 N.J. 113, 253 A.2d 793 (1969); *State Human Rights Commission v. Pauley,* W.Va., 212 S.E.2d 77 (1975). We find nothing unconstitutional in the administrative award of damages under this statute where due process procedural rights have been protected, where prohibited conduct has been well defined by the governing statute, and where judicial review is available.

Having found that a jury trial is not required for administrative adjudications under the Kentucky Civil Rights Act, that the statutory scheme is not unconstitutional for lack of "safeguards" against abuse of discretion by the Commission, and that the administrative adjudication of disputes, including the power to award damages, is not an unconstitutional usurpation of judicial powers, we conclude that no specific monetary ceiling for the award of damages for humiliation and embarrassment is constitutionally required. Once the Commission's function as factfinder in a due process hear-

ing has been upheld, there is no reason why the Commission should be held to a specified dollar limit while a jury deciding the same case would not be similarly limited. There is a possibility of arbitrary decision-making by the Commission, but the same possibility exists in a jury trial, and judicial review is available to modify or set aside an excessive award.

Humiliation and embarrassment are, by their nature, not easily quantified, yet juries have historically been entrusted with assessing similarly intangible elements of injury, such as pain and suffering and loss of consortium, without dollar limits. As long as judicial review is available there is no inherent evil in committing the same fact-finding function to an administrative body. In such cases a specific limit could itself be arbitrary, and the agency's experience in gauging similar cases gives it a range of reasonable awards which may help to make the agency less susceptible to an unreasonable finding than an inexperienced jury might be.

Humiliation and embarrassment lie at the core of the evil which the Kentucky Civil Rights Act was designed to eradicate. If victims are to be fairly compensated for these injuries, the factfinder must be free to assess reasonable damages as a jury would, provided that there is sufficient evidence to support the finding. For these reasons we hold that the statute is not an unconstitutional usurpation of judicial power.

### III.

### THE STANDARD OF REVIEW

KRS 344.240(2) provides in pertinent part:

"the findings of fact of the commission shall be conclusive unless clearly erroneous in view of the probative and substantial evidence on the whole record."

 The Court of Appeals interpreted this standard of review to mean that the Commission's findings must be supported by a preponderance of the evidence. This is

clearly wrong. The rule in Kentucky is that if there is substantial evidence in the record to support an agency's findings, the findings will be upheld, even though there may be conflicting evidence in the record. *Taylor v. Coblin*, Ky., 491 S.W.2d 78 (1970); *Reeves v. Jefferson County*, Ky., 245 S.W.2d 606 (1951). The agency's findings are clearly erroneous if arbitrary or unsupported by substantial evidence in the record. The "clearly erroneous" standard narrows the scope of review, yet it is not without teeth. The Commission has not been granted an unbridled discretion, and courts on review are not required to uphold arbitrary or unreasonable awards of damages.

### IV.

### SUFFICIENCY OF THE EVIDENCE

■ The Commission awarded $1,000 damages to the movant for humiliation and embarrassment caused by discrimination against her. The record shows substantial evidence of discrimination against Mrs. Cooper on the basis of pregnancy. While civil penalties may be assessed by administrative bodies, *Atlas Roofing, supra*, the statute in question here, KRS 344.230(3)(h), provides for compensatory, not punitive damages. Therefore evidence of discrimination alone is not the standard by which to evaluate damages: there must be evidence of actual humiliation and embarrassment. On that issue the record shows that Mrs. Cooper was not embarrassed or humiliated by the fact of the pregnancy itself, (TR. at 67), but she was angered and hurt when she was terminated as a result, (TR. at 38). We find the evidence sufficient to support the Commission's finding.

For the foregoing reasons we hold that the statute KRS 344.230(3)(h), is constitutional and that the assessment of damages is supported by the evidence in this case.

The decision of the Court of Appeals is reversed, and the case is remanded to the Circuit Court with instructions to enter a judgment in conformity with this opinion.

PALMORE, C. J., and CLAYTON, AKER and STEPHENS, JJ., concur.

STEPHENSON and STERNBERG, JJ., dissent and file separate opinions.

STEPHENSON, Justice, dissenting.

I would affirm the decision of the Court of Appeals affirming the judgment of the trial court. My disagreement with the majority opinion is based on the opinion that in this situation there is absolutely no evidence that Cooper suffered embarrassment and humiliation by any reasonable definition of the terms. The findings of fact by the Commission that Cooper was humiliated and embarrassed by Fraser telling her "he had fired her for her own benefit" and the remarks in the letter to the Division for Unemployment Insurance that he had dismissed Cooper "in her best interest and the coming child" and that Mrs. Cooper regarded the coming child as an "inconvenience" and that she showed a "disregard for her condition," simply cannot warrant a reasonable finding of embarrassment and humiliation. Embarrassment and humiliation denote shame, disgrace, degradation, distress, anguish, etc. See *Perkins v. Ogilvie*, 148 Ky. 309, 146 S.W.2d 735 (1912), which states that humiliation is a phase of mental anguish. This record does not directly or by inference detail any fact which would justify an award for embarrassment and humiliation. Thus I am of the opinion the Commission's findings are clearly erroneous. "Anger and hurt" are not terms of embarrassment and humiliation as approved by the majority opinion.

It is apparent to me that the Commission is using the vehicle of "embarrassment and humiliation" to impose punitive damages in the nature of a fine which exceeds the statutory authority granted to the Commission.

Although I do not find it necessary to reach the constitutional question here, I am disturbed by the statement in the majority opinion recognizing that the intangible elements of damages for embarrassment and humiliation are historically assigned to juries, and then makes a quantum leap in

jurisprudence that such fact finding for that and similar intangible elements of injury, such as pain and suffering, could properly be left to an administrative agency on the grounds of "experience" as opposed to an "inexperienced" jury. This poses some interesting constitutional questions which can be explored more fully in a future case. Suffice to say, administrative bodies created by statute generally operate within narrowly defined limits in adjudicating disputes and making awards. The constitutional right to a jury trial should have some meaning. *Atlas Roofing Co.*, cited in the majority opinion, involved "fines" imposed by OSHA and this power delegated to OSHA was validated solely on the ground that health and safety of the workers were involved. *Atlas* is no authority for the situation here at all.

Finally, the majority opinion finds among the safeguards "provision for a full due process hearing." The trouble with this is "due process" here may require a jury.

Accordingly I dissent.

STERNBERG, J., joins in this dissent.

STERNBERG, Justice, dissenting.

Movants' brief charges that "On June 10, 1976, Donna Cooper filed a complaint with Appellant Kentucky Commission on Human Rights, alleging that the Appellee had terminated her on account of her pregnancy, and therefore her sex, in violation of KRS 344.040."

KRS 344.230(2) provides:

"If the commission determines that the respondent has engaged in an unlawful practice, the commission shall state its findings of fact and conclusions of law and shall issue an order requiring the respondent to cease and desist from the unlawful practice and to take such affirmative action as in the judgment of the commission will carry out the purposes of this chapter...."

The Commission found that "As a direct result of being terminated, and of Respondent's statements to her and about her, Complainant was humiliated and embar-

rassed." Humiliation and embarrassment are simple phases of mental anguish. In other words, what movant Donna Cooper is saying is that she was humiliated and embarrassed by her awareness that respondent called her pregnancy to the attention of other people. Pregnancy is a condition exclusively feminine and it cannot for long be kept a secret from the knowledge of others.

If there is any substantial evidence to support the findings of the Commission, they cannot be found to be arbitrary and will be sustained. *Taylor v. Coblin*, Ky., 461 S.W.2d 78 (1970). However, when we measure the charge made by movant Cooper against respondent that she was fired because she was pregnant with the findings of the Commission, we are confronted with a failure of the proof to show or intimate humiliation and embarrassment. Although movant Cooper was angered and hurt when her employment was terminated by reason of her pregnancy, there is no showing of humiliation and embarrassment. There is a great deal of difference between being humiliated and embarrassed and being angered and hurt. Neither includes the other.

The evidence is insufficient to support the findings of the Commission; therefore, they are clearly erroneous.

KRS 344.230(3)(h) is an unconstitutional usurpation of judicial power.

In Kentucky we have a trifurcated form of government, legislative, executive, and judicial (Ky.Const. § 27), and except in certain instances not here applicable no one of these departments may exercise any power properly belonging to either of the other departments (Ky.Const. § 28). However natural and commonplace to many are these constitutional mandates and however much we give them lip service, yet it is not so. Of more recent years there has developed in our government a fourth branch known as administrative proceedings, which is a combination of legislative, executive and judicial. It is most difficult to ascertain where the power of one department stops and the delegated power of the administrative branch begins. The Civil Rights Act of Kentucky (KRS Ch. 344) has a wholesome

and salutary purpose. However, and irrespective of the high purpose, there are certain limits to which even the highest of design must yield.

KRS 344.230(2) provides, as we have heretofore noted, that in the event the Commission determines that the respondent has engaged in an unlawful practice, it may take affirmative action. This affirmative action which the Commission is delegated to take, among other things, may require the payment of damages for injury caused by an unlawful practice resulting in humiliation and embarrassment.

Section 7 of the Kentucky Constitution provides that "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution." Amendment Seven to the United States Constitution provides that "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury, shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of common law." The right to trial by jury was expanded by a provision in our Rules of Civil Procedure. CR 38.01 states, "The right of trial by jury as declared by the Constitution of Kentucky or as given by a statute of Kentucky shall be preserved to the parties inviolate."

This court, after quoting Section 7 of the Kentucky Constitution and in speaking to it, stated in *Branham v. Commonwealth*, 209 Ky. 734, 273 S.W. 489 (1925), as follows:

"The ancient mode of trial by jury, the right to which is guaranteed one charged with crime, by the section, supra, is a trial by jury according to the forms and requirements of the common law, the essential features of which were and are that he be put upon his trial in a court of justice, presided over by a judge, and that he be tried by a jury of the vicinage composed of 12 men, all of whom must agree upon a verdict."

Since the constitutional challenge has been made under Section 7 of the Kentucky Constitution and also under the Seventh Amendment to the United States Constitution, we need to consider the relation of these provisions to each other. The Seventh Amendment to the United States Constitution was adopted in 1791, while Section 7 of the Kentucky Constitution was adopted in 1891. The only restriction upon the people of Kentucky in making the 1891 Constitution was that it should be republic in form and not in conflict with the Constitution of the United States. *Stone v. Pryor*, 103 Ky. 645, 20 K.L.R. 312, 45 S.W. 1053, 1136 (1898). Thus, 1791 is the criterion year here applicable to the issue.

In the early case of *United States v. Mesna*, D.Minn., 11 F.R.D. 86 (1950), it was said that a defendant is entitled to a jury trial only upon those common law matters as to which jury trial existed in 1791. The question, however, of a right to jury trial must be decided from the allegations in the pleadings. *All American Airways v. Village of Cedarhurst*, E.D.N.Y., 15 F.R.D. 490 (1954). In the absence of pleadings, we must look to the issue made by the charges, the findings of fact, and the conclusions of law of the Commission, its order and award of damages. In the present case the issue is: did respondent discharge Donna Cooper by reason of her sex? If so, was she humiliated and embarrassed thereby to her damage? This latter issue is purely and simply one of law as contrasted to an issue of equity.

We must consider the present issue bearing in mind that our state constitution is a limitation upon the exercise of power rather than a grant of any specific power to the legislature. *Holsclaw v. Stephens*, Ky., 507 S.W.2d 462 (1974).

The delegation of power to the Commission to find facts is not under attack. It is the attempted delegation of power to the Commission to award damages for humiliation and embarrassment that cries out for redress. It is important to this case that we note that it grows out of a controversy between an administrative body acting for and on behalf of a private person, Donna Cooper, as complainant and a private per-

son, Alisdair Fraser, as respondent. In truth and in fact, it actually grows out of a controversy between two individuals. It is the nature of the issue that is the criterion for determining whether it is a common law tort triable by a jury. That this particular statutory proceeding did not exist prior to 1791 is of no concern. The legal nature of the issue is the proper concern. Humiliation and embarrassment are the same as emotional distress.

This court has recognized that humiliation and embarrassment are torts for which redress lies. In *Perkins v. Ogilvie*, 148 Ky. 309, 146 S.W. 735, 737 (1912), we said, ". . . Humiliation and mortification are simply phases of mental anguish; and under the allegation of distress or mental anguish any phase of mental anguish could be proven, and a recovery had therefor." We have repeatedly held that where a passenger is unlawfully ejected from a train he may recover for humiliation and mortification, and that these are elements of compensatory damages. *Lexington & E. Ry. Co. v. Lyons*, 104 Ky. 23, 46 S.W. 209, 20 Ky.Law Rep. 516 (1898); *Spink v. L. & N.R.R. Co.*, 52 S.W. 1067, 21 Ky.Law Rep. 778 (1899). In *Perkins* we further wrote: ". . . It is also the rule that, where a landlord unlawfully and forcibly enters the premises and evicts the tenant and his family, he is liable in damages for the tenant's sense of shame and humiliation in having his wife and family turned out into the streets. *Moyer v. Gordon*, 113 Ind. 282, 14 N.E. 476; *Richardson v. O'Brien*, 44 Ill.App. 243; *Rauma v. Bailey*, 80 Minn. 336, 83 N.W. 191; *Fillebrown v. Hoar*, 124 Mass. 580; Sutherland on Damages, Vol. 3, § 866."

In discussing liability in tort, it is written in 74 Am.Jur.2d, Torts, § 17:

"The violation of a statutory provision containing a mandate to do an act for the benefit of another, or the prohibition of the doing of an act which may be to his injury, is generally regarded as giving rise to a liability and creating a private right of action, whenever the other elements essential to a recovery are present. The omission of a statutory duty and common negligence may together give rise to what is but a single cause of action in tort."

The history of the emergence of the common law tort is dealt with in 86 C.J.S., Torts, § 5, as follows:

"Acts now called torts have been committed from the very beginning of society, but a development of anything like a clearly formulated conception of a tort is comparatively recent. While from the earliest times certain invasions of personal or property rights, now comprehended under the head of torts, were recognized as wrongful and as constituting a basis for civil liability, in some sort, both in the English law and in other legal systems still more ancient the concepts of tort and crime were at first confusedly intermingled, and no clear distinction was made between private and public law. In the next stage of development of the common law the notion of tort, in a distinct and integral sense, still remained unformulated and the history of tort is to be sought in the history of the various delictual actions which, in conjunction, made up the whole sum of then recognized civil liability for wrongs. By 1720, however, an attempt was made to consider these several specific wrongs in a work consolidating them under the general heading of torts, although the law on the subject was as yet in no respect systematized and neither bench nor bar had as yet any notion of a general law of torts; and Blackstone employs that term with respect to them. Throughout our legal history, torts of a specific character have been increasing steadily in number."

Movants, in arguing that neither the Seventh Amendment to the United States Constitution nor Section 7 of the Kentucky Constitution are violated, refer this court to three cases which were decided by the Supreme Court of the United States and one case from this court. Movants' reliance is ill put. The most recent of the United States Supreme Court cases so cited is *Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Commission*, 430 U.S.

442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). It not only does not support movants' position but actually speaks against it. We find no constitutional inhibition against the factfinding power of the Commission. *Atlas Roofing Co.* is an action by the government against an individual, while the subject action was initiated by and prosecuted in the name of Donna Cooper against another individual for damages growing out of alleged humiliation and embarrassment through the medium of an administrative body.

In speaking to the right to a trial by jury, the Supreme Court of the United States, in *Atlas Roofing Co.*, wrote:

"... At least in cases in which 'public rights' are being litigated—e.g., cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact—the Seventh Amendment does not prohibit Congress from assigning the factfinding function and initial adjudication to an administrative forum with which the jury would be incompatible.[7]"

By way of explanation, the court, in Note 7, said:

"These cases do not involve purely 'private rights.' In cases which do involve only 'private rights,' this Court has accepted factfinding by an administrative agency, without intervention by a jury, only as an adjunct to an Art. III court, analogizing the agency to a jury or a special master and permitting it in admiralty cases to perform the function of the special master. *Crowell v. Benson,* 285 U.S. 22, 51–65 [52 S.Ct. 285, 292–98, 76 L.Ed. 598] (1932). The Court there said: 'On the common law side of the federal courts, the aid of juries is not only deemed appropriate but is required by the Constitution itself.' Id., at 51 [52 S.Ct. at 292]."

In emphasizing its position as to differentiating between private and public rights, the United States Supreme Court further wrote:

"... Our prior cases support administrative factfinding in only those situa-tions involving 'public rights,' e.g., where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly *private tort,* contract, and property cases, as well as a vast range of other cases, are not at all implicated." (Emphasis added.)

The Kentucky case cited by movants is *Stearns Coal and Lumber Co. v. Commonwealth,* 167 Ky. 51, 179 S.W. 1080 (1915). This was an action to cause property to be assessed for the purpose of taxation. It arose out of a factfinding background in a controversy between the government and an individual. It in no way involved a dispute between individuals.

We are faced with the proposition that in the subject action Donna Cooper seeks to recover damages as the result of humiliation and embarrassment which are common law torts. The government of Kentucky was selected by Donna Cooper as the instrument and facility in which she sought to enforce her right, in view of which I have no hesitancy in finding that so much of KRS 344.230(3)(h) conflicts with both the Seventh Amendment of the United States Constitution and Section 7 of the Constitution of this Commonwealth.

I would affirm the decision of the Court of Appeals affirming the judgment of the trial court.